

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-15-00570-CV

**PEVETO COMPANIES, LTD.** d/b/a Brake Check,
Appellant

v.

**FASA FRICTION LABORATORIES, INC.,**
Appellee

From the 45th Judicial District Court, Bexar County, Texas
Trial Court No. 2011-CI-20405
Honorable Solomon Casseb, III, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:        Karen Angelini, Justice
                Marialyn Barnard, Justice
                Rebeca C. Martinez, Justice

Delivered and Filed:  November 16, 2016

AFFIRMED

Peveto Companies, Ltd. d/b/a Brake Check appeals a judgment entered against it based on a jury's verdict in a breach of contract case. Brake Check contends the evidence is legally and factually insufficient to support the jury's findings, and the trial court erred in denying its motion for judgment notwithstanding the verdict and motion for new trial. We affirm the trial court's judgment.

## BACKGROUND

Brake Check purchased brake pad and shoes from Fasa Friction Laboratories, Inc. on an open account for approximately six years.[1] In 2009, Brake Check adopted a different approach for its parts inventory, and Fasa agreed Brake Check could return the bulk of Brake Check's inventory of Fasa brake pads and shoes to Fasa for credit on its account. The evidence is conflicting regarding the reason the inventory was never returned.

In 2011, Brake Check sued Fasa seeking a declaratory judgment that it did not owe Fasa any money. Fasa filed a counterclaim asserting a breach of contract claim against Brake Check. Brake Check responded Fasa was the first to breach their agreement by failing to arrange for the return of the inventory. In the alternative, Brake Check asserted its performance was excused due to Fasa's actions.

After hearing the testimony, the jury found Brake Check materially failed to comply with the agreement, but Fasa did not fail to comply with the agreement. The jury also found Brake Check's failure to comply with the agreement was not excused. The jury awarded Fasa $253,550.61 in damages with additional amounts awarded for attorney's fees. Brake Check filed a motion for judgment notwithstanding the verdict and a motion for new trial which the trial court denied. Brake Check appeals.

### SUFFICIENCY OF THE EVIDENCE: BREACH AND EXCUSED PERFORMANCE

Brake Check's issues on appeal separately challenge each of the jury's liability findings and the trial court's denial of its motion for judgment notwithstanding the verdict and motion for new trial. However, Brake Check's arguments regarding the jury's findings and the trial court's rulings are interrelated. Brake Check argues the evidence is insufficient to support the jury's

---

[1] Because Fasa was located in Canada and Brake Check was located in the United States, all shipments and returns had to comply with customs requirements.

finding that it breached the agreement by failing to pay for goods it purchased from Fasa because the credit it would have received from the goods it was entitled to return would have offset any amount Brake Check owed to Fasa. Similarly, Brake Check argues the evidence is insufficient to support the jury's finding that Fasa did not breach the agreement because Fasa failed to follow its return policy and allow for the return of the goods in Brake Check's possession. Brake Check also argues the evidence is insufficient to support the jury's finding that its performance was not excused based on Brake Check's prior material breach. Finally, Brake Check argues the trial court erred in denying its motion for judgment notwithstanding the verdict and motion for new trial because the evidence is legally and factually insufficient to support the jury's findings.

A.      Standard of Review

When a party attacks the legal sufficiency of the evidence supporting an adverse finding on an issue for which it did not have the burden of proof, the party must show that no evidence supports the jury's adverse finding. *Exxon Corp v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 215 (Tex. 2011). Evidence is legally sufficient if it "would enable reasonable and fair-minded people to reach the verdict under review." *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

When a party challenges the legal sufficiency of an adverse finding on which it had the burden of proof, the party must demonstrate on appeal that the evidence conclusively establishes the facts in its favor as a matter of law. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001) (per curiam). We first examine the record for evidence that supports the finding. *Id.* If there is no evidence to support the finding, then we examine the entire record to determine if the contrary position is established as a matter of law. *Id*.

In conducting a factual-sufficiency review, we review all of the evidence in a neutral light and will reverse only if the evidence supporting the finding is so weak or the finding is so against

the great weight and preponderance of the evidence that it is clearly wrong or manifestly unjust. *See Dow Chem. Co.*, 46 S.W.3d at 242.

With regard to the credibility of the witnesses, the Texas Supreme Court has instructed us as follows:

> Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. They may choose to believe one witness and disbelieve another. Reviewing courts cannot impose their own opinions to the contrary.
> Most credibility questions are implicit rather than explicit in a jury's verdict. Thus, reviewing courts must assume jurors decided all of them in favor of the verdict if reasonable human beings could do so. Courts reviewing all the evidence in a light favorable to the verdict thus assume that jurors credited testimony favorable to the verdict and disbelieved testimony contrary to it.

*City of Keller*, 168 S.W.3d at 819. In summary, we "credit favorable evidence if reasonable jurors could, and disregard contrary evidence unless reasonable jurors could not." *Id*. at 827.

B.    Analysis

It is undisputed that Brake Check did not pay for all of the merchandise Fasa delivered to it. In addition, with the exception of the interest Fasa charged on the unpaid invoices, Brake Check did not challenge Fasa's evidence regarding the amount that it owed for the unpaid merchandise. Instead, Brake Check contends the evidence is insufficient to support the jury's findings because Fasa materially breached the agreement by failing to facilitate the return of the Fasa inventory in Brake Check's possession which was worth more than the balance Brake Check owed on its account. Brake Check similarly contends its performance was excused based on Fasa's failure to facilitate the return of the inventory. Therefore, Brake Check's sufficiency challenges turn on whether the evidence is legally or factually insufficient to support the jury's finding that Fasa did not breach the agreement based on the actions it took relating to the return of the inventory.

The parties agreed that Fasa's return policy was as follows:

RETURNS PROCEDURE

#1 Customers must forward a detailed list of items and quantities they wish to return. Along with the total weight and pallets of the return.

#2 Once the detailed list of returns is forwarded and approved by the returns department a RETURN AUTHORIZATION NUMBER will be issued and sent back to the customer.

#3 Customers must attach the Return Authorization Number on all pallets being returned and follow all shipping instructions indicated in the Return Authorization.

Although Brake Check had returned items based on this policy during the six years it purchased merchandise from Fasa, Robert Garis, Brake Check's support center director, agreed this return was different from the prior returns because it involved the bulk of the Fasa inventory in Brake Check's possession which Brake Check valued at $111,653.10.

The evidence is conflicting with regard to whether Brake Check complied with the first step of the returns procedure. Brake Check relies on a December 9, 2009 email Garis sent to Lorne Cherry who was the sales representative for Fasa handling the return. In the body of the email the following appears: "PAD RETURNS.xls." The witnesses testified the ".xls" is an indication that a spreadsheet was attached to the email. The subsequent emails establish a list was sent to Cherry because on December 10, 2009, Cherry emailed Garis stating a "cleaned up file" was attached that he would continue to work on. In addition, on December 11, 2009, Cherry emailed Garis stating he was attaching a revised return list; however, the revised list did not include either weight or pallet information.

With regard to the weight information, Garis testified he was never required to provide weight information for the prior returns; however, the jury could have disbelieved him. In addition, Garis testified the original spreadsheet sent to Cherry contained information regarding the number

of pallets;[2] however, Brake Check was unable to produce the original spreadsheet. Garis testified Brake Check searched its computers for the spreadsheet but it could not be located. Although Garis testified the spreadsheet was not on his personal computer, the jury could have disbelieved Garis since he allegedly attached the spreadsheet to his December 9, 2009 email to Cherry. Both Fasa's owner Roger Stephan and Rima Gharib, who worked in Fasa's accounting department for fifteen years, testified Fasa was unable to locate any such spreadsheet. Furthermore, in an email Cherry sent Garis on February 8, 2010, Cherry requests Garis to "let us know the total amount of skids so we can figure out the freight logistics." From this email, the jury could infer Cherry never received information regarding the number of pallets or skids. Finally, after Cherry left Faras, Gharib became responsible for coordinating the return. On March 1, 2010, Gharib sent Garis an email stating, "Please advise the status of the return you are sending back. Has the return been shipped yet? If not when will it be sent. Also please provide a list of the items that are being returned." Garis responded, "We *will* have the list this Wednesday, March 3, 2010, and will ship that same day." (emphasis added). At trial, Garis testified he incorrectly worded the email and meant that the goods would be ready for Fasa to pick up, not that Brake Check would ship them.

On March 4, 2010, Gharib sent Garis another email requesting that he email her a list of what Brake Check was returning. The same day, Gharib emailed Garis instructing him to use DHL as the broker for the pallets Brake Check wanted to return. On March 11, 2010, Gharib sent Garis another email stating, "Did the return ever get shipped or are you still having problems with the broker? Also please e-mail me a list of what you are returning as well as a copy of the check where invoice 021270 was paid." Garis did not respond to this email. On March 24, 201, Gharib sent Garis another email marked as high importance with the notation "2ND REQUEST" stating,

---

[2] Pallets are also referred to as skids.

"Please advise as to what is happening with the return. We still have not received the actual return or your list." Garis did not respond to this email. On April 16, 2010, Gharib sent Garis a final email marked as high importance with the notation "3RD REQUEST" stating, "Please advise what is going on with the return. When will you be sending it back and e-mailing me a list of items being returned. If you still require help getting it through customs let me know so we can take care of it. Your cooperation in this matter is required." Garis did not respond to this email. At trial, Garis admitted he did not respond to the emails because he was frustrated and was not going to engage in an email campaign especially since Stephan was not returning his calls; however, Stephan testified he returns all of the calls he receives. During his testimony, Garis also suggested he might have told Gharib the list was already provided in a phone conversation; however, the jury could have disbelieved his testimony especially since Gharib continued to ask for the list.

Brake Check further contends that it complied with the first step of the procedure because Cherry provided Brake Check with a return goods authorization containing the return authorization number referenced in the second step. Although Cherry did send Brake Check a return goods authorization on February 8, 2010, the return goods authorization was blank with regard to weight and number of skids.[3] Gharib testified Cherry sent the blank return goods authorization to enable Brake Check to return the merchandise. Similarly, Stephan testified the blank return goods authorization was sent out of frustration because Brake Check had not provided the information necessary for Fasa to facilitate the return. Moreover, in Cherry's email providing the blank return goods authorization, he stated, "Please let us know the total amount of skids so we can figure out the freight logistics." Although Brake Check relies on Gharib's and Stephan's testimony that a customer is entitled to rely on a return goods authorization as evidence that it had complied with

---

[3] Gharib testified that the shipment must match the information on the return goods authorization or customs would seize the shipment.

the first step of the procedure, the jury could have discounted this testimony based on the testimony establishing that the provision of the blank return goods authorization was an exception to the standard procedure, especially in view of the fact that Cherry was still requesting information regarding the total number of skids. Garis also suggested in his testimony that he could have provided the information by telephone; however, the jury was within its province to disbelieve him. Instead, based on the testimony, the jury could have believed that during the course of these communications, Brake Check decided to ship the return on its own.[4] Although Garis testified he subsequently determined the customs requirements were too difficult, in her last email, Gharib again offered to assist Brake Check stating, "If you still require help getting it through customs let me know so we can take care of it." Garis chose not to respond to this email. Garis also testified that after discovering "the logistical nightmare of getting stuff over the Canadian border," he called Gharib and told her Fasa needed to pick up the goods; however, Gharib testified Garis only called her one time to ask her which custom broker to use. Accordingly, the jury could disbelieve Garis's testimony. Finally, the jury heard testimony that Brake Check sold some of its Fasa inventory to another supplier in exchange for a credit on its account with the other supplier. Although Garis testified Brake Check still had nine pallets of Fasa inventory, the jury was the sole judge of his credibility.[5]

Having reviewed all of the evidence relating to the efforts to facilitate the return of the Fasa inventory, we hold the evidence is legally and factually sufficient to support's the jury's finding

---

[4] The jury could have inferred this from Cherry's February 11, 2010 email to Gharib stating Brake Check was "reconsolidating the account and shipping back prepaid the equivalent amount in product" and from Garis's March 1, 2010 email stating, "We will have the list this Wednesday, March 3, 2010 and will ship that same day."

[5] Garis initially made reference to eighteen pallets in his testimony but later testified that after receiving the request to also return cores with the shipment, Brake Check restacked the pallets and was "able to consolidate it into 14 so that we could get the additional 8 pallets of cores on the same trailer." Interestingly, the email from Cherry referencing the cores was sent February 8, 2010; therefore, even if Brake Check included pallet information on its original spreadsheet, that information would have needed to be updated so that the return goods authorization matched the actual shipment.

that Fasa did not breach the agreement by failing to facilitate the return. Therefore, we overrule Brake Check's challenges to the sufficiency of the evidence supporting the jury's liability findings.[6]

<strong>INTEREST</strong>

Brake Check also challenges the sufficiency of the evidence to support the jury's inclusion of interest in the amount of damages it awarded to Fasa. Fasa responds that Brake Check did not preserve this complaint for our review and, in the alternative, the evidence is sufficient.

With regard to preservation, Brake Check contends it preserved this complaint in its motion for judgment notwithstanding the verdict and its motion for new trial. Having reviewed Brake Check's motions, we conclude the motions challenged the sufficiency of the evidence to support the jury's findings as to liability but did not challenge the jury's answer on the damages question. For example, in the motion for judgment notwithstanding the verdict, Brake Check asserted the "crux of this case was which party first materially breached the agreement," and then addresses the evidence relating to the jury's liability findings. Brake Check summarizes Gharib and Stephan's testimony as establishing Brake Check "fully complied with all material contractual obligations while Fasa failed to comply by not picking up the goods waiting to be returned." The motion does not make any reference to interest. Similarly, in the motion for new trial, Brake Check asserts the trial court should grant a new trial because "the evidence is insufficient to support the jury's answer to Question Number 1 and Question 2" and "the jury's answer to Question No. 3, Question No. 4, and Question No. 6 are all against the great weight and preponderance of the evidence and are manifestly unjust." The damages question was Question No. 7. Accordingly,

---

[6] Because the evidence is sufficient to support the jury's findings that Fasa was not liable to Brake Check, we need not address Brake Check's alternative issue that a remand is necessary because the jury did not award it attorney's fees.

we hold Brake Check did not preserve its complaint regarding the sufficiency of the evidence to support the jury's inclusion of interest in the damage award.[7] *See San Juan v. Segovia*, 14-14-00407-CV, 2016 WL 3633628, at \*1 (Tex. App.—Houston [14th Dist.] July 7, 2016, no pet.) (holding challenge to damages on appeal not preserved where motion for new trial challenged liability findings but not damage findings); *see also Dunnagan v. Watson*, 204 S.W.3d 30, 45 (Tex. App.—Fort Worth 2006, pet. denied) (distinguishing between preservation of liability and damage findings); *Wyler Indus. Works, Inc. v. Garcia*, 999 S.W.2d 494, 506 (Tex. App.—El Paso 1999, no pet.) (same).

## CONCLUSION

The trial court's judgment is affirmed.

Karen Angelini, Justice

---

[7] We note that Brake Check only objected to the submission of Question No. 1 and Question No. 2 in the jury charge, and did not object to the submission of Question No. 7.