**SOVEREIGN CAMP, W. O. W., v. WIGGINS.**

**No. 2869.**

Court of Civil Appeals of Texas. Beaumont.

May 13, 1936.

Rehearing Denied June 3, 1936.

Davis, Avery & Wallace, of Center, for appellant.

Sanders & McLeroy, of Center, for appellee.

J. E. WHEAT, Special Justice.

Washington H. Wiggins, appellee, filed suit in the county court of Shelby county on October 11, 1934, against the Sovereign Camp, Woodmen of the World, appellant, to recover on a beneficiary certificate issued by the appellant on November 27, 1909, to the appellee as a member of the Woodmen of the World.

Wiggins alleged that he became 70 years of age on February 24, 1932, and that having become disabled, made his claim for the disability payments as provided in the beneficiary certificate, and that the appellant agreed to pay him the sum of $392.51, in cash in settlement of the claim; that, after surrendering his certificate, the appellant refused to make the payment.

He further alleged:

That he had made all of the payments as provided in the original beneficiary certificate and in the re-rating certificate which was issued by the appellant on December 31, 1919, and that said certificates provided that: "In case he shall have maintained himself in good standing until he reaches the age of seventy years, and shall thereafter have become totally, permanently and physically disabled by reason of old age, upon his complying with the laws of the Order there shall be paid to him from the Beneficiary Fund an amount equal to 10 per cent. of that which would be due under the provisions of this Certificate if he were

dead, and at the end of each year thereafter during his lifetime a like amount shall be paid to him for nine consecutive years. The amount, if any, remaining unpaid on this certificate at his death shall be paid to his beneficiary."

That by reason thereof he was entitled to $100 each year since he had become 70 years of age, and that he would be entitled to $100 each year thereafter during his lifetime. That he had made the proper proof, and that he was at the time of filing the suit entitled to two annual payments of $100 each, and that, by reason of the appellant's refusal to pay said amount, it had become liable to pay him the sum of 12 per cent. penalty and a reasonable attorney's fees.

In the petition the plaintiff prays: "That he have judgment against said defendant in the sum of $200.00 on account of old age disability benefit up to April 1, 1933, with interest on $200.00 as aforesaid; for the sum of $9.08 over payment of premiums, with interest on said sum at the legal rate from April 1, 1932, until paid; for penalty of $24.00; for attorney's fees of $100.00; for all costs of this suit; for such other and further relief, at law or in equity to which plaintiff may be justly entitled."

The case was submitted to the jury on special issues, in which they answered that the appellee was born on February 24, 1862, and that he was totally, permanently, and physically disabled, and that the appellant had agreed to pay him the sum of $392.51, and had refused to do so; the appellee having furnished the required proof and having surrendered his policy of insurance.

Judgment was rendered in favor of the appellee that he recover the sum of $392.51 which the appellant had agreed to pay him with attorney's fees of $50, interest from June 20, 1930, at the rate of 6 per cent., and for the 12 per cent. penalty, after deducting the sum of $52.57 for a rate adjustment on account of the difference in the rate payable upon appellee's age as stated in the certificate and as found by the jury.

The appellant objected to the submission of special issue No. 6 to the jury. This issue was: "Do you find from a preponderance of the evidence that the defendant agreed with the plaintiff to pay him, in lieu of all other benefits under the policy, the sum of $392.51?"

Appellant also excepted to the answer thereto and the judgment of the court based thereon, assigning the action of the court thereon as error because this issue was not raised by the pleadings.

Inasmuch as it is necessary to reverse the case on other grounds, any question of the sufficiency of the pleadings can be obviated on another trial by repleading.

The appellant also assigns as error the failure of the court to grant a new trial on account of the argument of the appellee's attorneys:

"I wish that I could tell you what I think of this defendant; from the testimony in the case, I wish I could tell you what I think of this defendant, or any other concern that will take advantage like the testimony shows that it has in this case, but my language will not allow me to do this, but I think taking the testimony in the case, that is has acted most contemptible by taking this old man's money as it did and after he has paid them more than $800.00 as premiums on the policy for them to get possession of the policy and then say to him: 'Old man, you will have to get out.' I say I think it is most contemptible. I do not ask you for sympathy for Mr. Wiggins, as Mr. Avery says that I was asking; I merely wanted just fairness, and the law correctly administered. I had rather go out on the streets and take up a collection for the old man, and I will be one of the first to donate something to him. I just want common justice. * * *

"I want you to answer those issues like the facts are and hereafter when this concern goes to insure a person and collect premiums for many years and in his old age try to trick him as the facts show in this case that they did try to do by agreeing with him to pay him $392.51 and request that he surrender his policy to them, which he did, and make him believe that they would pay him this amount and then let his policy lapse, they will stop and say, 'No, those people down there in Shelby County, Texas, wont allow us to do that; we may be able to do it up here in Nebraska and we can do as we please up here, but when we get down to Texas and Shelby County, we will have to obey the law. * * *

"The testimony shows that in this cause that by means of offering Mr. Wiggins the plaintiff the amount due on his policy, taking the correspondence that has been introduced in this case, it shows that they tricked this old man, who, Mr. Avery says,

now is feeble in mind, in sending his policy in they kept up a line of correspondence, writing him back and forth, trying to get him to surrender his policy, which he did. He sent in his application for disability benefits,—right here it is—then they got his policy and then after he sent·in his policy on the agreement that they would pay him $392.51, 'No, old man, it is too late now, you paid us about $800.00 in premiums and we got your policy on the representation that we would pay you this amount, now your policy is dead, you have not kept on paying us, now we don't need you; the world is not big enough for both of us, now you get out. The testimony shows in substance the fact.'"

This argument was based on facts not in the record, was highly prejudicial and inflammatory, and seemed to have for its purpose arousing sympathy for the appellee and creating the idea of crookedness or unfairness on the part of the appellant in taking the old man's money and then suspending him for failure to keep up the monthly payments. In fact, his rights in the premises are based entirely upon the agreement that he made with them when he became a member of the organization in 1909 and when he changed the agreement in 1919, and all of the rights that the appellant insisted upon during the trial were the rights stipulated in those agreements. It does seem hard that a man pays premiums for nearly twenty years and comes to the end of the road broken in health, poverty-stricken, unable to continue paying his dues, and then forfeit his policy for nonpayment of dues. However, any one familiar with the idea of insurance knows that the one who lives has to help pay for those who "cash in." The reasonableness of the contract or the unfairness of its provisions are not issues to be raised at the time of the trial; these matters were. settled when the contract was entered. His rights are fixed, and are not subject to the arbitrary actions of the organization nor on his loss of the physical possession of the certificate.

No objection was made to this improper argument by the appellant, at the time it was made, but we think Judge Critz has very ably stated the rule in the case of Robbins v. Wynne (Tex.Com.App.) 44 S. W.(2d) 946, 949, as follows: "In this connection, we hold that the correct rule is that, if the argument be such, or is made under such circumstances that, if objection is made at the time counsel making the argument can offer explanation therefor which will render such argument proper, or can make such amends as will render the same undoubtedly harmless, or, if the argument be of such a nature that its proper withdrawal by counsel or instructions by the court to the jury to disregard will cure the error, and render its harmful effect free from doubt, then the objections should be made at the time, and failure to do so waives the error. On the other hand, if the argument be such that the converse of the above propositions is true, then it would be idle to say that opposing counsel should object at the time, when the objection might do nothing more than render the improper remarks more damaging than they would be if he remained silent."

It is a matter of common knowledge that, after sympathy had been aroused or prejudice created, no action of the court can remove the effect.

It cannot be said that the argument was harmless in this case. There were two sharply drawn issues in the case: The age of the plaintiff and the agreement as to the cash settlement. According to the records of the appellant, the plaintiff's age at the time of the application for the disability payments was 69, rather than 70, and the correspondence between the appellant and appellee which was introduced in evidence leaves the question as to whether or not an agreement was made very much in doubt. The argument was calculated to create the impression with the jury that the appellant was a tricky insurance company, and therefore could not be believed. Both questions were answered against the appellant.

The appellant also assigns as error the action of the court in not setting aside the answer of the jury as to the age of the appellee. He testified that he was born February 24, 1862. His beneficiary certificate issued November 27, 1909, gave his age at that time as 47, and the re-rating certificate on May 17, 1920, gave his age as 57. The affidavit of' his half-sister, Mary Smith, who had possession of the family Bible, which affidavit was sent in by the appellee in connection with his claim for disability insurance, states that "the Bible shows that he was born February 24, 1863." The Bible record introduced in evidence shows the following births:

Sariah Jane Wiggins was born the 27th day of November, 1857.

Julia Ann Wiggins was born January 17, 1859.

Mariah Wiggins was born the 25th day of May, 1861.

W. H. Wiggins, Jr., was born the 24th day of February 1862(3). (Plaintiff contended this figure was 1862; defendant contends that it was 1863.)

Ida Wiggins was born the 12th day of August, 1865.

Elizabeth Wiggins was born the 26th day of March, 1867.

R. R. Wiggins was born the 4th day of April, 1869.

Martha Ann Wiggins was born the 16th day of February, 1871.

Mary Rosele Wiggins was born the 1st day of May, 1873.

James Wiggins was born the 1st day of January, 1876.

Stonewall J. Wiggins was born the 4th day of August, 1878.

The poll tax receipt offered by appellee was paid on January 3, 1910, and gave his age as 47 years. The only other evidence offered on this point of any probative force is the testimony of appellee himself, who testified that he was born February 24, 1862. He seemed rather positive on this question, but his mind does not seem to be very clear on other matters. At any rate, the verdict of the jury seems to be against the preponderance of the testimony. Assuming that the Bible record shows appellee's birth as February 24, 1863, as contended by appellant, it is corroborated by the other evidence in the case and by reason and experience. The eleven Wiggins children were born with a degree of regularity that was probably more common at that time than now. As will be noted from the dates of the births above shown, a child was born approximately every 2 years from 1857 to 1878. Assuming that the appellee was born February 24, 1862, destroys this rhythm. There would only be 9 months difference between his age and his next older sister, and there would be 3 years and 6 months between his age and his next younger sister.

When the verdict of the jury is considered in connection with the improper argument above mentioned, we are of the opinion that the case should be reversed. It may be that upon another trial the appellee can strengthen his case with additional proof. Also, under appropriate pleadings, it may be that appellee can establish that the appellant is estopped to declare a forfeiture of the policy by reason of its conduct in connection with the disability claim filed by the appellee. For which reasons we do not render the case, but instead remand it for another trial.

Reversed and remanded.