NUMBER 13-00-203-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI

__________________________________________________________________


CITY OF HIDALGO , Appellant,


v.

JAMES WISDOM , Appellee.

___________________________________________________________________


On appeal from the 332nd District Court

of Hidalgo County, Texas.

__________________________________________________________________


O P I N I O N

Before Chief Justice Valdez and Justices Rodriguez and Cantu (1)

Opinion by Justice Rodriguez


Appellee, James Wisdom, sued appellant, the City of Hidalgo (the City), for wrongful discharge under chapter 451 of the
Texas Labor Code. See Tex. Lab. Code Ann. § 451.001 (Vernon 1996). Wisdom alleged he was terminated as a firefighter
for the City in retaliation for filing a workers' compensation claim. A jury found Wisdom had been wrongfully discharged
and assessed damages in the amount of $134,500.00. By four issues, the City complains (1) the evidence was legally and
factually insufficient to support a finding of a causal link between Wisdom's workers' compensation claim and his
discharge: (2) the evidence did not support an award of mental anguish damages; (3) the evidence did not support an award
of past and future lost earnings; and (4) the court erred in the admission of irrelevant and prejudicial evidence. 

Having found the past lost wage damages to be excessive, we suggest a remittitur in lieu of reversal. Subject to remittitur,
we will affirm in part as modified, and reverse and render in part.

I. FACTS

Wisdom injured his back on July 30, 1992, while working as a firefighter with the City. On August 3, 1992, Wisdom was
examined by a doctor and obtained a work release with three restrictions; no bending, lifting or twisting. He was given a
light duty position. On September 2, 1992, however, after an alleged confrontation between Wisdom and his immediate
supervisor, Fire Chief Juan Reyes, Wisdom was placed on indefinite suspension without pay by then City Manager Benito
Lopez. Lopez told Wisdom that when he was released to work full duty, he would be reinstated. Lopez did not want
Wisdom "coming back to work with any sort of restrictions."

On July 31, 1994, Wisdom received a medical evaluation report that certified he had reached his maximum medical
improvement. He was given a whole body impairment rating of seven per cent. Wisdom testified that over the next two
years, he contested the impairment rating because he did not want to lose his job. In April 1996, Wisdom believed he was
again capable of fully performing as a firefighter. On April 17, 1996, Wisdom provided Chief Reyes with a doctor's work
release certifying Wisdom "has recovered sufficiently to be able to return to . . . regular work . . . duties on 7/31/94." When
Wisdom informed Chief Reyes he was ready to return to work, Chief Reyes told Wisdom he needed to get City Manager
Joe Vera's (2) advice on how to proceed.

After several conversations with Chief Reyes, Wisdom spoke to Vera who informed him there were no positions available,
and that he would have to submit a new job application. Although Wisdom completed a new application on or about June
4, 1996, the evidence revealed Chief Reyes made a notation that he saw the application for the first time on March 12,
1996, three months before it was actually filed. (3) Furthermore, a form entitled "Notice of Termination for Fire Protection . .
. Employee," and signed by Chief Reyes, was forwarded to the Texas Commission on Fire Protection, notifying the
commission that Wisdom had been terminated on October 3, 1996, for not complying with fire department certification
standards. (4) 

II. LEGAL AND FACTUAL SUFFICIENCY CLAIMS

By its first issue, the City complains that the evidence was legally and factually insufficient to support the finding that but
for Wisdom's filing the claim in 1992 he would have been rehired by the City in 1996.

When the appellant, complaining of the legal insufficiency of an adverse verdict, did not have the burden of proof on the
issue at the trial court, the reviewing court must use a no evidence or legal sufficiency review standard. See Hickey v.
Couchman, 797 S.W.2d 103, 109 (Tex. App.--Corpus Christi 1990, writ denied). When reviewing legal sufficiency, we
view the record evidence in the light most favorable to the party in whose favor the verdict has been rendered, and indulge
every reasonable inference in that party's favor. See Formosa Plastics Corp. U.S.A. v. Presidio Eng'rs & Contractors, Inc.,
960 S.W.2d 41, 48 (Tex. 1998). When determining factual insufficiency of an adverse finding where the other party had
the burden of proof, we must consider, weigh and examine all of the evidence which supports and which is contrary to the
jury's determination. See Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989); Hickey, 797 S.W.2d at 109. 
We overturn findings only if they are so against the great weight and preponderance of the evidence as to be clearly wrong
and unjust. See Ortiz v. Jones, 917 S.W.2d 770, 772 (Tex. 1996).

Causal Link

Section 451.001 of the Texas Labor Code provides that "[a] person may not discharge or in any other manner discriminate
against an employee because the employee has . . . filed a workers' compensation claim in good faith. . . ." Tex. Lab. Code
Ann. § 451.001(1) (Vernon 1996). The burden of proof is on the employee to demonstrate the causal link between the
discharge and the filing of his claim, an element of his prima facie case for retaliatory discharge. Id. at § 451.002(c); see
Garcia v. Allen, 28 S.W.3d 587, 600 (Tex. App.--Corpus Christi 2000, pet. denied). The employee must prove that but for
the filing of the workers' compensation claim the discharge would not have occurred when it did. See City of Fort Worth v.
Zimlich, 29 S.W.3d 62, 65 (Tex. 2000); (5) Cont'l Coffee Prod. Co. v. Cazarez, 937 S.W.2d 444, 450 (Tex. 1996). An
employee can meet his burden without showing that he was discriminated against solely because of the filing of a workers'
compensation claim; however, he must show that the filing of the claim was at least a determining factor in the
discriminatory conduct. Terry v. Southern Floral Co., 927 S.W.2d 254, 257 (Tex. App.--Houston [1st Dist.] 1996, no
writ); see Gorges Foodservice, Inc. v. Huerta, 964 S.W.2d 656, 665-66 (Tex. App.--Corpus Christi 1997, no pet.). This
causal connection may be established by direct or circumstantial evidence and by reasonable inferences arising from it. See
Garcia, 28 S.W.3d at 600.

Several factors have been recognized by Texas courts of appeals as circumstantial evidence sufficient enough to establish a
causal link between the filing of a compensation claim and subsequent termination of employment, including: (1)
knowledge of the compensation claim by those making the decision on termination; (2) expression of a negative attitude
toward the employee's injured condition; (3) failure to adhere to established company policies; (4) discriminatory treatment
in comparison to similarly situated employees; and (5) evidence that the stated reason for the discharge was false. See
Cazarez, 937 S.W.2d at 450-51; Garcia, 28 S.W.3d at 600; Gorges Foodservice, 964 S.W.2d at 665 (citations omitted).

As to the first factor, knowledge of the compensation claim and subsequent termination, the City contends that the
testimony and exhibits submitted establish that employment decisions relating to an employee could only be made by the
city administrator or the city council, and that there is no evidence to establish the city administrator had knowledge of the
compensation claim. We disagree. It is undisputed that Chief Reyes, who acknowledged he had authority to make
employment decisions related to the firefighters, and who notified the Texas Commission on Fire Protection of Wisdom's
termination, knew Wisdom had filed a workers' compensation claim in 1992. It is also apparent that in 1992 Wisdom
talked to Lopez about his injury and the restricted work release. Lopez indefinitely suspended Wisdom without pay
following receipt of that information, and sent a copy of the written notification to Chief Reyes. It can also be inferred
from the undisputed testimony of Wisdom that Vera knew about the injury and claim when Wisdom requested
reinstatement in 1996. Vera informed Wisdom there were no positions available and that he would have to submit a new
job application. Chief Reyes also testified that when Wisdom gave him the work release, he told Wisdom he needed to talk
to the city manager to get advice on how to proceed because he thought the release was "kind of fishy."

With regard to the second factor, Wisdom references his own trial testimony as evidence of Chief Reyes's negative attitude
toward him following his injury in 1992. Wisdom testified that following his injury, he returned to his job and was given
light duty assignments. Approximately one month after he had returned to work, Chief Reyes was squeegeeing water off
the floor while Wisdom watched. Speaking in Spanish, Chief Reyes stated, "Pos [sic] este cabron es teniente y yo soy el
jefe aqui. El va estar parado viendo me a mi barriendo. Este [expletive] no va a jalar asi." Wisdom, who understands
Spanish, paraphrased this comment for the jury as "He is just the lieutenant here. I'm the Fire Chief, so why am I going to
be doing a janitor's job and he is going to be standing there watching me do this? I don't think that's going to work." (6) 
Wisdom testified Chief Reyes then went straight to City Hall. Later that day, Wisdom was given a notice of indefinite leave
by Lopez. Wisdom was told to leave the station and not to return until he had full medical clearance.

The City contends Wisdom does not complain of any discrimination by Lopez in 1992, or by Vera when he requested to
return to work. The City argues that because the city administrator and the city council have sole authority to hire and fire
employees, Wisdom cannot rely on the actions and alleged motives of Chief Reyes to establish the causal link between the
filing of his compensation claim and his subsequent termination of employment. However, comments made by others may
provide some evidence of discriminatory intent if they are: (1) related to the protected class of persons of which the
plaintiff is a member; (2) proximate in time to the termination; (3) made by individuals with authority over the employment
decision; and (4) related to the employment decision at issue. See Medina v. Ramsey Steel Co., Inc., 238 F.3d 674, 683 (5th
Cir. 2001); Wal-Mart Stores v. Bertrand, 37 S.W.3d 1, 10 (Tex. App.--Tyler 2000, pet. denied). Moreover, a remark that
comes from either the official decision-maker, or one who had influence over the decision-maker, may properly be taken
into account as evidence of discriminatory animus. See Medina, 238 F.3d at 683-84. Here, Chief Reyes was in charge of
the firefighters. Although city policy may not have designated Chief Reyes as the one who made decisions to terminate
firefighters, Wisdom was placed on indefinite leave without pay less than a week after he sustained a work-related injury,
and on the same day that a confrontation was alleged to have occurred between Wisdom and Chief Reyes. While the actual
termination occurred four years later, we cannot assume that the expression of a negative attitude by Chief Reyes was
inconsequential to the resultant termination of Wisdom. See id.

Chief Reyes testified that, although he could have been helping to clean the station by using water to sweep the floor, he
did not recall any confrontation between himself and Wisdom on September 2, 1992. He remembers only that Wisdom
gave him a doctor's excuse that day, and that he relayed it to the city manager. Lopez testified he recalled seeing Wisdom
near his office or running into him and asking him why he was there because he thought Wisdom was on workers'
compensation leave. When Wisdom informed him he was on light duty, Lopez testified he told Wisdom there were no
light duty assignments. He put that in writing at Wisdom's request. Lopez did not recall receiving a doctor's release for
Wisdom. Lopez claims his decision was not based on what anyone else might have told him, but rather was based on
budgetary and liability concerns. According to Lopez, recommendations were made by the fire chief but the city manager
ultimately signed off on any personnel actions regarding hiring.

It is within the sole province of the jury, as the trier of fact, to judge the credibility of the witnesses and the weight to be
given their testimony. See Gorges Foodservice, 964 S.W.2d at 666; Garcia v. Dependable Shell Core Machines, Inc., 783
S.W.2d 246, 248 (Tex. App.--Corpus Christi 1989, no writ). In resolving contradictions and conflicts, the jury may choose
to believe all or part or none of the testimony of any one witness in arriving at the finding it concludes was the most
reasonable under the evidence. See Garcia, 783 S.W.2d at 248. We may not substitute our judgment for that of the trier of
fact, even though, after reviewing evidence, we may have reached a different conclusion from that of the trier of facts in the
case. See Walter Baxter Seed Co. v. Rivera, 677 S.W.2d 241, 245 (Tex. App.--Corpus Christi 1984, writ ref'd n.r.e.). 
Certainly, the jury could have believed Wisdom's testimony regarding Chief Reyes's negative attitude toward his injured
condition, rather than the testimony of the witnesses for the City.

Regarding the fifth factor, evidence that the stated reason for the discharge was false, Wisdom refers us to the notice of
termination forwarded to the Texas Commission on Fire Protection. On the notice, Chief Reyes indicated Wisdom had
been terminated for not complying with fire department certification standards. The date of Wisdom's termination was
noted as October 3, 1996, yet his certification did not expire until October 31, 1996, twenty-eight days after he was
terminated. There is also conflicting testimony suggesting that the unavailability of a job opening was the reason for
termination, not the expiration of Wisdom's certification. This was evidenced by the testimony of Chief Reyes and
Wisdom. Wisdom testified Vera informed him there were no positions available. Chief Reyes testified he believed
Wisdom had not been terminated because he had not given Wisdom a letter stating he was fired. There is also
inconsistency in a document submitted into evidence wherein Fire Chief Reyes stated "Mr. Wisdom did not go to me
asking for a job." However, Chief Reyes testified that when Wisdom provided him with a doctor's release, Wisdom asked
him for a job. Proof that the stated reasons for discharge are false is sufficient to establish that an employee was terminated
in violation of section 451.001. See Wyler Indus. Works, Inc. v. Garcia, 999 S.W.2d 494, 501 (Tex. App--El Paso 1999, no
pet.) (citations omitted); Duhon v. Bone & Joint Physical Therapy Clinics, 947 S.W.2d 316, 319 (Tex. App.--Beaumont
1997, no writ). Because there is some evidence that the reasons for termination presented by the City were false, the jury
could have inferred that Wisdom was terminated in violation of section 451.001.

Finally, we address the third and fourth factors, failure to adhere to established company policies, and discriminatory
treatment in comparison to similarly situated employees. Wisdom contends the termination violated City policy that an
employee out on a leave of absence will be given an opportunity for employment in another position, or a new position, if
his position was filled when he is ready to return to work. Chief Reyes testified that he replaced Wisdom in 1993 for
failure to report to work. When Wisdom asked to be reinstated, he was told there were no jobs available, and was not
reinstated. Wisdom submitted a new job application. He was not rehired. There was testimony that the City was not
hiring in the department at that time. Additionally, former City Manager Lopez testified that before he left in 1995, the
department was trying to hire people who were dually certified as firefighters and emergency medical technicians (EMT). 
Wisdom did not have an EMT certification. However, Herrera, a lieutenant who joined the fire department in 1975 and left
in 1992, was reinstated in 1994 after taking a leave of absence for two years even though he did not have an EMT
certification. There is, therefore, some evidence to support these factors.

We conclude that there was legally sufficient evidence of a causal connection between Wisdom's compensation claim and
his termination. Furthermore, the finding of a causal connection is not so against the great weight and preponderance of the
evidence as to be clearly wrong and unjust, thus, we find the evidence factually sufficient. The City's first issue is
overruled. (7)


Mental Anguish Damages

By its second issue, the City complains about the damages awarded for mental anguish. The jury awarded $8,500.00 for
compensatory damages in the past and $28,000.00 for compensatory damages in the future. The City contends that
Wisdom did not meet his burden of proof on establishing mental anguish damages, and that the evidence is legally and
factually insufficient to support the jury's award for past and future mental anguish.

Damages for mental anguish may be recovered for violation of section 451.001. See Tex. Lab. Code Ann. § 451.002(a);
Borden, Inc. v. De La Rosa, 825 S.W.2d 710, 719 (Tex. App.--Corpus Christi 1991),vacated pursuant to agreement, 831
S.W.2d 304 (Tex. 1992). "We review an award of unliquidated damages such as mental anguish by a sufficiency of the
evidence standard." Texas Animal Health Comm'n v. Garza, 27 S.W.3d 54, 63 (Tex. App.--San Antonio 2000, pet. denied)
(citing Larson v. Cactus Util. Co, 730 S.W.2d 640, 641-42 (Tex. 1987)). Furthermore, in awarding mental anguish
damages, juries must exercise their discretion, but such discretion is limited. See Saenz v. Fidelity & Guar. Ins.
Underwriters, 925 S.W.2d 607, 614 (Tex. 1996); see also Dico Tire, Inc. v. Cisneros, 953 S.W.2d 776, 791-92 (Tex.
App.--Corpus Christi 1997, pet. denied). ("When the elements of damages considered by the jury include the more
amorphous, discretionary damages, such as mental anguish, pain and suffering, physical impairment, and disfigurement,
any amount awarded above the more definitive past medical expenses and lost wages will be left to the discretion of the
jury.").

Mental anguish which implies a high degree of mental pain and distress, is "more than mere disappointment, anger,
resentment or embarrassment, although it may include all of these. It includes a mental sensation of pain resulting from
such painful emotions as grief, severe disappointment, indignation, wounded pride, shame, despair or public humiliation, or
a combination of any of these." Auto. Ins. Co. of Hartford, Conn. v. Davila, 805 S.W.2d 897, 906 (Tex. App.--Corpus
Christi 1991, writ denied) (citations omitted). To recover for mental anguish, a plaintiff must offer "direct evidence of the
nature, duration, and severity of their mental anguish, thus establishing a substantial disruption in the plaintiffs' daily
routine," or other evidence of "'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation,
embarrassment, or anger.'" Saenz, 925 S.W.2d at 614 (quoting Parkway Co. v. Woodruff, 901 S.W.2d 434, 444 (Tex.
1995)).

Wisdom testified that it was his lifelong dream to be a firefighter. Since he was in school, Wisdom dreamed of driving a
fire truck, of becoming a lieutenant and then a fire chief. He described being put on indefinite leave in 1992 as a
devastating blow "because I eventually tried to avoid what was happening to me now." He also described being away from
the department as leaving him feeling devastated. Wisdom emphasized how important he believed his job was to the
community and testified that he loved his job because it gave him the chance to save people's lives. He testified about how
he used his job to go to schools in the community and talk about being a firefighter, and about his goals of helping citizens.
Further, Wisdom testified that it was a "hit" to have the job he loved and all that it encompassed taken away from him.

Having considered the above testimony and having reviewed the entire record, we conclude it is devoid of direct evidence
of the nature, duration and severity of any mental anguish Wisdom allegedly suffered. Furthermore, Wisdom's testimony
does not reflect the high degree of mental pain and distress necessary to support mental anguish damages. We do not
minimize the distress and disappointment Wisdom experienced in the loss of his job; however, the loss of one's job alone
cannot be said to be "beyond the vicissitudes of daily life." See Parkway, 901 S.W.2d at 444 n.10. Wisdom's testimony
reflects no more than "mere emotions." See id. at 444. He sought no counseling or medical treatment. There is no
evidence that his professional reputation suffered so as to prevent him from pursuing his profession. (8) Wisdom wholly
failed to demonstrate mental distress resulting from any substantial disruption in his daily routine. Compare Goodman v.
Page, 984 S.W.2d 299, 306-07 (Tex. App.--Fort Worth 1998, pet. denied) (holding that testimony regarding stomach
problems, harm to reputation, public and private humiliation, being devastated, feeling betrayed, and subjection to
derogatory comments constituted high degree of mental pain and distress), and Am. West Airlines, Inc. v. Tope, 935 S.W.2d
908, 917 (Tex. App.--El Paso 1996, no writ) (holding testimony that plaintiff was scared to death, devastated, frustrated,
very angry and in therapy almost every day was sufficient to support damages for mental anguish), with Saenz, 925 S.W.2d
at 614 (holding plaintiff's allegations that she "worried . . . a lot" and worried about payment of medical bills and possible
loss of her home did not rise to a compensable level under Parkway), and Parkway, 901 S.W.2d at 444 (holding testimony
that plaintiff was hot, very disturbed, not pleased, and upset over flooding of home was insufficient to establish mental
anguish), and Phar-Mor, Inc. v. Chavira, 853 S.W.2d 710, 712 (Tex. App.--Houston [1st Dist.] 1993, writ denied) (holding
that headaches, nervousness and lack of sleep, without more, constituted no evidence of mental anguish).

Accordingly, having reviewed the evidence in the light most favorable to Wisdom, and indulging every reasonable
inference in his favor, we conclude there is no direct evidence of the nature, duration, and severity of mental anguish. Nor
is there evidence of a high degree of mental pain and distress that is more than mere worry, anxiety, vexation,
embarrassment, or anger. Thus, the evidence is legally insufficient to support an award of mental anguish damages, past or
future. See Formosa Plastics, 960 S.W.2d at 48; Saenz, 925 S.W.2d at 614. Further, considering all of the evidence both
in support and contrary to the jury's determination, we conclude that the jury's award of mental anguish damages, past and
future, is so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. See Plas-Tex,
Inc., 772 S.W.2d at 445; Ortiz, 917 S.W.2d at 772. The City's second issue is sustained.Past and Future Lost Wages

The City complains by its third issue that the evidence is legally and factually insufficient to support the jury's award of
$70,000.00 for past lost wages and $28,000.00 for future lost wages.

Past Lost Wages

The correct measure of damages for past lost wages is the amount of money the employee would have earned had he not
been terminated, less the sum he did earn after termination. See Goodman, 984 S.W.2d at 305. The jury awarded Wisdom
$70,000.00 for wages and benefits lost between his termination and the time of trial. Wisdom presented evidence of his
salary in 1992, four years before he was terminated. At that time he was making an annual salary of approximately
$12,793.60. (9) The City asserts that any award for past lost wages would have encompassed the period of time from April
17, 1996, when Wisdom requested he return to work, through July 31, 1999, the date of Wisdom's probable retirement. 
Wisdom does not dispute the April 1996 beginning date, but does contest the ending date. Wisdom testified that he would
have been eligible for retirement on that date, not that he would have actually retired on that date. We note that Chief
Reyes testified that he had been with the City for thirty-seven years, long after he was eligible to retire. On the basis of this
testimony, the jury could have concluded that being eligible to retire on a certain date does not mean an employee would
actually retire on that date. Therefore, the jury could have calculated past lost earnings from April 17, 1996, through
November 10, 1999, the date the jury returned its verdict.

However, using Wisdom's annual income of $12,793.60, such a calculation would have resulted in an award of
approximately $46,100.00, not $70,000.00. Wisdom argues the jury could have taken into consideration other factors
including his desire to be a fire chief, the hiring of other firefighters and emergency personnel between 1992 and 1996, and
increases in salary during that time period, as the basis for the calculation. However, the record reveals no facts regarding
promotions, a fire chief's salary, cost of living increases, and the like, to support the $23,900.00 difference.

Additionally, the City contends wages earned after termination and before trial should have been deducted from the amount
of calculated lost wages. (10) Wisdom's testimony established he earned wages of approximately $50.00 to $150.00 per
week for five to six months before the time of trial. He also testified that between June 1996, and February or March of
1999, in addition to helping his parents build a home, he performed contract labor, earning approximately the same amount
per week--$50.00 to $150.00. Wisdom could not testify with accuracy, however, as to the length of time worked at this
job.

Based on this testimony, over the thirty-nine month (156 week) period from the date of his termination until the date of
trial, Wisdom earned from $7,800.00 to $23,400.00. This income should have been taken into account by the jury and
deducted from the total amount Wisdom would have earned had he remained employed with the City. See id. The City
urges that $24,000.00 should have been deducted. Wisdom asserts the award of $70,000.00 took into account his earnings
minus the income earned before termination. We disagree with both contentions. Based on our review of the record and
considering the amount of past lost wages awarded by the jury, it is apparent the jury's award did not reflect a deduction for
any amount of earned income. However, considering the amount of past lost wages awarded by the jury, we conclude
$7,800.00 in earned income should have been deducted from the amount of money Wisdom would have earned had he not
been terminated.

Accordingly, we find the evidence supports the past lost wages finding only to the extent of $38,300.00, including a salary
of $46,100.00 less $7,800.00 earned income. (11) Appellant's third issue is sustained as to past lost wages. We suggest a
remittitur in the amount of $31,700.00.

Future Lost Wages

The correct measure of future damages is the sum of money the employee would have earned in the future had he not been
terminated, less the sum of money he will actually earn in the future. Goodman, 984 S.W.2d at 305. "A plaintiff is not
required to prove the exact amount of future lost wages, but only facts from which the jury can determine the proper
amount." Id. (citing McIver v. Gloria, 140 Tex. 566, 169 S.W.2d 710, 712-13 (1943)). The jury awarded Wisdom
$28,000.00 for future lost wages. The jury was within its authority to determine Wisdom would have continued to work as
a City of Hidalgo firefighter for a number of years had he not been terminated, and to project his earned income for this
work.

The City argues that because Wisdom would have been eligible for retirement in July 1999, he would not have been
entitled to any award for lost future earnings and retirement. However, having determined that the evidence did not
establish Wisdom planned to retire in July 1999, we conclude there is evidence to support the award of future lost earnings
in the amount of $28,000.00, and it is not so against the great weight and preponderance of the evidence that it is manifestly
unjust. The City's third issue as to future lost wages is overruled.

III. ADMISSION OF EVIDENCE

By its fourth issue, the City asserts the admission of the following evidence caused the rendition of an improper verdict: (1)
1992 incidents involving Chief Reyes and Wisdom; (2) Wisdom's house burning; (3) a young boy's death; and (4) the City's
policy of restoration of employment for those in the armed forces. The City contends the evidence was irrelevant or
prejudicial.

The admission or exclusion of evidence is a matter within the trial court's discretion. See Norwest Mortgage, Inc. v.
Salinas, 999 S.W.2d 846, 861 (Tex. App.--Corpus Christi 1999, pet. denied) (citingCity of Brownsville v. Alvarado, 897
S.W.2d 750, 753 (Tex. 1995)). A trial court abuses its discretion when it acts without regard for any guiding rules or
principles. See Alvarado, 897 S.W.2d at 754. To obtain reversal of a judgment based on error in the admission or
exclusion of evidence, an appellant must show that the trial court's ruling was in error and that the error was calculated to
cause and probably did cause "the rendition of an improper judgment." Tex. R. App. P. 44.1; see Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998). In making this determination, the appellate court must review
the entire record. See Alvarado, 897 S.W.2d at 754. An appellate court must uphold the trial court's evidentiary ruling if
there is any legitimate basis for the ruling. See Owens-Corning Fiberglas, 972 S.W.2d at 43; Norwest Mortgage, 999
S.W.2d at 861. Reversible error does not usually occur in connection with rulings on questions of evidence, unless the
appellant can demonstrate that the whole case turns on the particular evidence admitted or excluded. See Texaco, Inc. v.
Pennzoil, Co., 729 S.W.2d 768, 837 (Tex. App.--Houston [1st Dist.] 1987, writ ref'd n.r.e.). Furthermore, error in the
improper admission of evidence that is merely cumulative of properly admitted evidence is harmless. See Gee v. Liberty
Mut. Fire Ins. Co., 765 S.W.2d 394, 396 (Tex. 1989).

First, the City contends the trial court erred in allowing the jury to hear evidence that was remote in time, including
testimony about (1) the fire chief's alleged animosity toward Wisdom because Wisdom told him he wanted to be the fire
chief, (2) the incident involving Chief Reyes that occurred on the date appellee was suspended without pay, (3) the burning
of Wisdom's home, and (4) the death of a young boy. "[A]lthough evidence can be excluded when it is too remote to be
material, the question of remoteness is within the trial court's discretion." Palmer v. Miller Brewing Co., 852 S.W.2d 57,
62 (Tex. App.--Fort Worth 1993, writ denied) (citing Freeman v. Texas Comp. Ins. Co., 603 S.W.2d 186, 193 (Tex. 1980)).
"Where the evidence is directly related to the main subject in controversy, it need not relate to the exact time in question." 
Palmer, 852 S.W.2d at 62 (citation omitted). In this case the actions of the fire chief and the city administrator were
probative to the City's determination to place Wisdom on indefinite suspension and eventually discharge him. The
testimony regarding the home and the boy was arguably relevant to the issue of mental anguish. We conclude the trial
court did not abuse its discretion in admitting this evidence.

The City also complains that the trial court erred in admitting testimony about Wisdom's house burning when he was young
and his helping a young boy who later died. Wisdom offered the testimony regarding the burning house to demonstrate that
the job as a fireman was a lifelong dream for Wisdom, thus, it was arguably relevant to the issue of mental anguish. This
testimony was also cumulative of other evidence showing how Wisdom dreamed of being a firefighter and how much it
meant to him. See Robinson, 923 S.W.2d at 556. Wisdom's testimony regarding the death of a young boy, when taken in
context, was offered when Wisdom was asked to describe the duties of a firefighter. The trial court did not abuse its
discretion by admitting this testimony. Furthermore, the City's objection to the testimony regarding the death of a young
boy was sustained. The City did not ask the trial court to instruct the jury to disregard the evidence before asking for a
mistrial. "Failure to request the court to instruct the jury to disregard the inadmissible testimony results in waiver of the
alleged error where the instruction would have cured the error." See State Bar v. Evans, 774 S.W.2d 656, 658, n.6 (Tex.
1989) (citation omitted); Ortiz v. Ford Motor Credit Co., 859 S.W.2d 73, 77-78 (Tex. App.--Corpus Christi 1993, writ
denied). The City contends that prejudice was inherent in this testimony and was calculated to, and did arouse sympathy,
thus, no action of the court could remove the effect. See Sovereign Camp, W.O.W. v. Wiggins, 94 S.W.2d 1237, 1239 (Tex.
Civ. App.--Beaumont 1935, no writ). Having reviewed the testimony, however, we cannot conclude the testimony was so
prejudicial that an instruction would not have cured the error. Thus, the City has failed to preserve error.

Finally, the City contends that evidence of its policy of restoration or employment for armed forces personnel was
irrelevant and prejudicial. Wisdom contends it was introduced to show that such a position could have been held open for a
period of years. Wisdom elicited testimony showing he was not in the armed services. Additionally, a document entitled
"City of Hidalgo Personnel Policies" was admitted as a trial exhibit. The document set out the City's personnel policies
regarding the reinstatement of employees taking sick leave or leave of absences in other situations, including military leave. 
All evidence regarding the City's full and complete policy on rehiring employees was before the jury. The City has not
shown that error, if any, was harmful and calculated to cause and probably did cause the rendition of an improper judgment. 
See Tex. R. App. P. 44.1. Accordingly, the City's fourth issue is overruled.

In summary, we overrule issues one and four. Finding no evidence of mental anguish, we sustain issue two, and, subject to
the suggestion of remittitur, that part of the trial court's judgment awarding $36,500.00 for mental anguish is reversed and
rendered. We overrule issue three as it relates to future lost wages. However, on issue three as it relates to past lost wages,
we sustain issue three and suggest a remittitur of $31,700.00, representing past lost wages in excess of $38,300.00. See
Tex. R. App. 46.3; Rice Food Markets, Inc. v. Ramirez, No. 07-00-0297-CV, 2001 Tex. App. LEXIS 5313, at *28, 32-33
(Tex. App.--Amarillo August 7, 2001, no pet. h.); Gorges Foodservice, 964 S.W.2d at 677. If Wisdom remits such amount
of $31,700.00 within fifteen days of the date of this opinion, the trial court's judgment will be affirmed as to (1) $38,300.00
for past lost wages, and (2) the award of $28,000.00 for future lost wages. See Tex. R. App. P. 46.3; Rice Food Markets,
2001 Tex. App. LEXIS 5313, at *32-33; Gorges Foodservice, 964 S.W.2d at 677 (citing Hoechst Celanese Corp. v. Arthur
Bros., Inc., 882 S.W.2d 917, 931 (Tex. App.--Corpus Christi 1994, writ denied)). If Wisdom does not remit the amount of
$31,700.00 as suggested above, the judgment of the trial court will be reversed and the entire cause will be remanded for a
new trial as to all issues of liability and damages. See Tex. R. App. P. 43.2(d), 44.1(b).

NELDA V. RODRIGUEZ

Justice



Do not publish .

Tex. R. App. P. 47.3.



Opinion delivered and filed

this 31st day of August, 2001.

1. Retired Justice Antonio Cantu assigned to this Court by the Chief Justice of the Supreme Court of Texas pursuant to
Tex. Gov't Code Ann. § 74.003 (Vernon 1998).

2. It appears from the record that Vera became City Manager after Wisdom was placed on indefinite leave and held that
position when Wisdom was terminated.

3. Chief Reyes testified that he probably mistakenly wrote 1996 and should have written 1997, but that he could not
remember.

4. The evidence establishes Wisdom's firefighter certification had been automatically renewed while he was on indefinite
unpaid suspension and was not to expire until October 31, 1996.

5. While City of Fort Worth v. Zimlich, 29 S.W.3d 62 (Tex. 2000), involves a whistleblower claim, the standard of
causation used in that case is applicable to section 451 cases. See Cont'l Coffee Prods. Co. v. Cazarez, 937 S.W.2d 444,
450 (Tex. 1996); Dep't of Human Servs. v. Hinds, 904 S.W.2d 629, 635-36 (Tex. 1995); Gorges Foodservice, Inc. v.
Huerta, 964 S.W.2d 656, 667 (Tex. App.--Corpus Christi 1998, no pet.); see also Tex. Lab. Code Ann. §§ 554.002,
554.004 (Vernon 1994) (Whistleblower Act).

6. On appeal, Wisdom's counsel provides the following literal interpretation: "this idiot is a Lieutenant, and I am the Chief,
so why is he standing there watching me do a janitor's job. This [expletive] is not going to work."

7. Wisdom also urges that the City did not meet its burden of showing there was a legitimate reason for his termination. 
However, after a case has been fully tried on the merits, as in this case, we do not focus on a burden-shifting scheme, if any,
in order to establish a legitimate reason for termination; rather, we inquire into whether the record contains sufficient
evidence to support the jury's ultimate findings. See Rutherford v. Harris County, Texas, 197 F.3d 173, 180-81 (5th Cir.
1999); Smith v. Berry Co., 165 F.3d 390, 394 (5th Cir. 1999); Patterson v. P.H.P. Healthcare Corp., 90 F.3d 927, 933 (5th
Cir. 1996). Wisdom must show that but for the filing of the workers' compensation claim the discharge would not have
occurred when it did. See Zimlich, 29 S.W.3d at 65; Cazarez, 937 S.W.2d at 450. While we agree with the City that there
was some evidence that it had other reasons for terminating Wisdom, it is the jury as the sole evaluator of the witnesses'
credibility that is entitled to resolve conflicts in the testimony as it sees fit. See Gorges Foodservice, 964 S.W.2d at 666;
Garcia, 783 S.W.2d at 248. Based on the facts set out above and our foregoing analysis, we conclude that Wisdom
presented legally and factually sufficient evidence to support the jury's ultimate finding that but for the filing of the
workers' compensation claim the discharge would not have occurred when it did.

8. We note that Wisdom testified that he did not pursue employment as a firefighter because he was told he would not be
hired because of the pending litigation. These questions were related to mitigation of damages. Furthermore, the testimony
is not direct evidence of the effect of his termination on his reputation.

9. Wisdom's annual income included an annual $11,793.60 salary and the City's annual contribution of $1,000.000 made to
his retirement fund.

10. The jury charge instructed the jury to "[r]educe lost wages, if any, by wages earned, if any, in the past and wages, if any,
which in reasonable probability will be earned in the future."

11. The City also alleges that Wisdom failed to establish he attempted to mitigate his damages. However, mitigation is a
defensive issue upon which the City bore the burden of proof at trial. Amer. West Airlines, Inc. v. Tope, 935 S.W.2d 908,
915 (Tex. App.--El Paso 1996, no writ) (citing Gulf Consol. Int'l Inc. v. Murphy, 568 S.W.2d 565, 566 (Tex. 1983) (opin.
on rehearing)). Thus, the City had "the difficult task of demonstrating that it established as a matter of law [Wisdom's]
failure to mitigate, or that the jury's findings on this issue were so against the great weight and preponderance of the
evidence as to be manifestly unjust." Id. (citing Sterner v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex. 1989)). Wisdom
testified that he performed contract labor work during his period of suspension. From this evidence, a jury could
reasonably believe that Wisdom did attempt to mitigate damages, although he was unable to secure a job as a firefighter. 
We further note that the City indirectly acknowledged Wisdom did mitigate his damages when it argued that Wisdom's lost
wages should have been reduced by the amount of his income earned as a contract laborer. We conclude, therefore, that
this argument is misplaced.